UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00296-RJC-DSC

| | | |
|---|---|---|
| KENNETH H. TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| AUTO TRUCK TRANSPORT USA, | ) | |
| LLC, et. al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendant International Association of Machinists and Aerospace Workers' ("IAMAW") Motion to Dismiss for Failure to State a Claim, (Doc. No. 11); its Memorandum in Support, (Doc. No. 12); Defendant Auto Truck Transport USA, LLC's ("ATT") Motion to Dismiss for Failure to State a Claim, (Doc. No. 13); its Memorandum in Support, (Doc. No. 14); Kenneth Tate's ("Plaintiff") Responses in Opposition, (Doc. Nos. 17, 18); Defendant IAMAW's Reply, (Doc. No. 22); Defendant ATT's Reply, (Doc. No. 23); and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 24), recommending the Court grant Defendants' Motions. Plaintiff has filed a timely objection. (Doc. No. 25). Defendants also filed timely replies to Plaintiff's objections. (Docs. No. 26, 27). The Motions are now ripe for the Court's consideration.

# I.    BACKGROUND

## A. Procedural Background

Plaintiff filed this action on August 11, 2017, seeking compensatory and punitive damages as well as injunctive relief. (Doc. No. 5 at 10, 11, 12, 13). On September 18, 2017, both defendants moved to dismiss Plaintiff's Complaint for failure to state a claim. (Doc. Nos. 12, 13). On January 31, 2018, the Magistrate Judge filed an M&R recommending the Court grant Defendants' motions and dismiss Plaintiff's case. (Doc. No. 25). On February 14, 2018, Plaintiff filed an objection to the M&R. (Doc. No. 25). On February 21, 2018, Defendants filed separate replies. (Doc. Nos. 26, 27).

## B. Factual Background

Plaintiff, 63 years old, brings claims against his employer, ATT, and his union, IAMAW, alleging discriminatory and retaliatory actions in violation of the Age Discrimination in Employment Act ("ADEA") as well as a common law breach of contract claim. (Doc. Nos. 5 at 10, 11; 18 at 2).

On April 28, 2014, Plaintiff was hired as a driver by ATT at their San Antonio, Texas terminal. (Id. ¶ 7). While employed by ATT, Plaintiff was a dues-paying member of IAMAW. (Id. ¶ 12, 15). ATT and IAMAW entered into a National Master Agreement ("CBA") on approximately November 1, 2014. (Id. ¶ 11). The CBA "dictates the collective bargaining terms of employment for ATT employees." (Id. ¶ 11). Among other things, the CBA requires newly hired drivers to complete a "90-day probationary period" before receiving protections from the CBA. (Doc. No. 5-1 at

7).  An employer's actions during this time are "without recourse."  (Id.).  Once the probationary period is complete, drivers may then transfer into open shop positions. (Id. at 13).

In March of 2015, Plaintiff transferred to ATT's Mt. Holly, North Carolina terminal as a driver.  (Doc. No. 5 ¶ 20).  In January 2016, Plaintiff accepted a shop position.  (Id. ¶ 21, 36).  Under the CBA, Plaintiff began a 90-day qualification period, which the CBA mandates "for anyone who transfers" into another shop position.[1] (Doc. No. 5-1 at 14).  During this period, Plaintiff was laid off from his shop position in February 2016, along with two younger employees, Corey Williams and Michael Sipe.  (Doc. No. 5 ¶ 37, 54).  Williams and Sipe, who have "shop seniority" over Plaintiff, were recalled back to the shop before Plaintiff.  (Doc. No. 5 ¶ 53, 54).  Per the CBA, shop position layoffs and recalls are based on "terminal seniority."  (Doc. No. 5-1 at 6).

On February 24, 2016, Plaintiff filed a grievance pursuant to the CBA but did not receive a response from his terminal manager within the required 10 days.  (Id. ¶ 39; Doc. No. 12-1 at 2).  Plaintiff later received a letter from an IAMAW representative informing him that his "grievance merits no further process."  (Doc.

---

[1] Under Article 9, Section 3 of the CBA states "[t]here will be a ninety (90) days qualification period for anyone who transfers."  (Doc. No. 5-1 at 14).  The CBA does not further define what it means for an employee to be in a qualification period.  It appears that Defendants infer from the CBA that an employer's actions during a qualification period are "without recourse"; however, the CBA uses such language only regarding a "90-day probationary period."  See (Doc. No. 5-1 at 6).

No. 5 ¶ 40). On June 8, 2016, Plaintiff filed two administrative charges with the Equal Employment Opportunity Commission ("EEOC"). (Doc. Nos. 5-2; 5-3). On March 2, 2017, the EEOC dismissed Plaintiff's charges and issued a right to sue notice. (Doc. Nos. 5-4, 5-5).

After his February 2016 layoff, Plaintiff remained a driver until April 2017, when he accepted a second shop position and was again subject to a "90-day qualification period." (Doc. No. 5 ¶ 49). On May 18, 2017, the Shop Steward told Plaintiff he was not wanted in the shop. (Id. at ¶ 58). Plaintiff also claims that, while he was working in the shop, a coworker cursed at him, called him "stupid," and told Plaintiff that he was "unable to comprehend" the requirements of his job. (Id. ¶ 57). On May 24, 2017, Plaintiff received a performance review, repeating that Plaintiff was "unable to comprehend" some of his work. (Id. ¶ 60). Plaintiff was subsequently laid off from the shop position and returned to work as a driver. (Id. ¶ 60). In the wake of his second layoff, Plaintiff filed another grievance in June 2017, which he claims remains unaddressed by ATT and IAMAW. (Id. ¶ 61).

## II.   STANDARD OF REVIEW

### A.   Review of the Magistrate Judge's Recommendation.

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C);

Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

    B.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).

The standard of review for a motion to dismiss under 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). It tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

5

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 545 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). Additionally, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (quoting Twombly, 550 U.S. at 555–56). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Academy Alumni Ass'n, Inc. 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

In moving to dismiss Plaintiff's Complaint, Defendants assert that Plaintiff has not provided facts plausibly showing either age discrimination or retaliation under the ADEA. (Doc. No. 14 at 2). Defendants also argue that Plaintiff's breach of contract claim is both partially time-barred and otherwise fails to show any breach of contract based on the "plain language of the [CBA] at issue." (Id.). The Magistrate

Judge agreed with Defendants, finding that there were no facts in the Amended Complaint plausibly showing Plaintiff suffered from age discrimination or retaliation, and that ATT was within its rights when it removed Plaintiff from his shop position. (Doc. No. 24 at 7–8). The Court agrees with the Magistrate Judge and adopts his recommendation.

A.    Plaintiff's ADEA Claim was Properly Dismissed.

Plaintiff's first claim alleges a breach of the ADEA due to age discrimination and retaliation. (Doc. No. 5 at 10). The ADEA prohibits employers from "discriminat[ing] against any individual … because of such individual's age." Gentry v. East West Partners Club Management Co., Inc., 816 F.3d 228, 234 (4th Cir. 2016) (quoting 29 U.S.C. § 623(a)(1)). "Age must be the 'but-for' cause of the employer's action for the action to violate the ADEA." Fisher v. Winston-Salem Police Dep't, 28 F. Supp. 3d 526, 529 (M.D.N.C. 2014) (quoting Buchagen v. ICF Intern., Inc., 545 F. App'x 217, 220 (4th Cir. 2013). To support his claims, Plaintiff points to his layoffs in 2016 and 2017 and comments made to him in the workplace. Plaintiff also makes general accusations that ATT favored young employees and hired younger, less experienced employees outside of the union. (Doc. No. 5 ¶¶ 32, 52, 56).

1.  Plaintiff's 2016 Layoff

Plaintiff's 2016 layoff fails to support a claim for age discrimination. During the 2016 layoff period, Plaintiff states that two younger employees, Corey Williams and Micheal Sipe, were called back to the shop before Plaintiff was. (Id. ¶54). Plaintiff failed to allege how ATT deviated from the layoff procedure prescribed by

the CBA. In fact, Plaintiff seems to fundamentally misunderstand the CBA. Plaintiff's Complaint quotes the CBA for the proposition that shop position layoffs begin with the most junior employ in relation to company seniority. (Doc. No. 5 ¶ 22) (citing Doc. No. 5-1 at Art. 3, §2(a)). However, the next sentence in the CBA clearly states, "Shop employee layoffs will be by terminal operation and *terminal seniority*." (Id. at Art. 3, §2(a)) (emphasis added). In his Complaint, Plaintiff admits that Williams and Sipe "may have shop seniority," but maintains that Plaintiff's "certification and company seniority are ignored."[2] (Doc. No. 5 ¶ 54). Therefore, Plaintiff alleges nothing more than the fact that ATT followed the CBA in laying off and later calling back employees in respect to their terminal seniority. In fact, after being laid off from his shop position, ATT returned Plaintiff to his driver position—a practice mandated by the CBA. (Id. ¶ 49); see also (Doc. No. 5-1 at Art. 10, §3).

2. Plaintiff's 2017 Layoff

Plaintiff's 2017 layoff also fails to support a plausible claim for age discrimination. Jut prior to his latest layoff, Plaintiff alleges that Mark Foster, another employee, called Plaintiff "stupid" and said that Plaintiff was "unable to

---

[2] Without specifying how, Plaintiff argues that "shop seniority" differs from "terminal seniority." (Doc. No. 25 at 3). Defendant ATT maintains that the two terms are synonymous. (Doc. No. 27 at 2). Defendant points to the CBA and explains that shop employees work in specific terminals while drivers travel across the country. (Id.). Furthermore, shop positions are assigned based on terminal seniority. (Doc. No. 5-1 at 6, 14). Plaintiff uses "shop seniority" in his amended complaint and fails to explain to the Court how the term differs from terminal seniority or how it impacts his claims. Therefore, the Court agrees with Defendant ATT that shop seniority and terminal seniority are synonymous.

comprehend." (Doc. No. 5 ¶57). Plaintiff states that his supervisors called him a "problem" and complained that he "questions everything." (Id. ¶ 56). Plaintiff also alleges that the Shop Steward told him that neither defendant wanted Plaintiff in the shop. (Id. ¶58). Finally, in May of 2017, the terminal manager gave Plaintiff his employee review form, which repeated the phrase "unable to comprehend." (Id. ¶ 60).

The above allegations hint at rude behavior. However, the Court is unable to find a nexus between these comments and Plaintiff's age. Nor has Plaintiff connected these comments to a discriminatory intent. While Plaintiff alleges that younger employees were generally treated better than older employees and that both Defendants kept hiring younger people outside of the company who had less experience, (Doc. No. 5 ¶¶ 32, 52, 56), these allegations are simply to general and conclusory.

In McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., the Fourth Circuit found that a plaintiff failed to state a claim under Title VII. 780 F.3d 582, 585 (4th Cir. 2015). In that case, the plaintiff alleged that the Highway Administration failed to hire her due to her race or sex. The plaintiff repeatedly stated that a bias against African American women motivated the Highway Administration's decision. The plaintiff, however, provided no factual basis for what happened in the course of her interview to support a conclusion that the defendant predetermined to select Caucasian applicants for an open position. "While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable*

*inference* that the decisionmakers were motivated by bias." Id. at 586.

It is not clear to the Court that Plaintiff alleges that ATT hired younger employees at the exclusion of older employees. The Court also finds it noteworthy that Plaintiff's 2017 layoff occurred during the 90-day qualification period mandated by the CBA. While Plaintiff insists that he was already deemed a qualified driver having passed an initial probationary period, (Doc. No. 25 at 2), the CBA mandates an additional period "for *anyone* who transfers" to a shop position, (CBA Art. 10, §3) (emphasis added). Plaintiff's Complaint merely alleges that ATT did not deem him "qualified" due to his "failure to comprehend."

In the end, Plaintiff's "'naked' allegations—a 'formulaic recitation' of the necessary elements—'are no more than conclusions' and therefore do not suffice." McCleary-Evans, 780 F.3d at 585 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009)). As is apparent in this case, conclusory allegations lack a plausible explanation that Plaintiff was similarly situated to the other, younger employees he passively references. See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010), aff'd sub nom., 566 U.S. 30 (2012) ("the complaint fails to establish a plausible basis for believing [that Plaintiff and another employee] were actually similarly situated or that race was the true basis for [Plaintiff's] termination."). Plaintiff was clearly not similarly situated to William and Sipe after the 2016 layoff— they had greater shop seniority. Furthermore, Plaintiff failed to allege facts comparing himself to similarly situated employees during his 2017 layoff. Plaintiff also failed to allege that he was, in fact, performing up to ATT's standards.

B.    Retaliation Claim

The ADEA's anti-retaliation provision makes it unlawful for employers to discriminate against employees because they opposed a practice made unlawful by the ADEA or because they made a charge alleging such an unlawful practice.   29 U.S.C. § 623(d).   To successfully allege retaliation, plaintiffs must show: "(1) engagement in a protected activity; (2) a materially adverse action; and (3) a causal link between the protected activity and the employment action."   Fisher, 28 F. Supp. 3d at 529 (citing Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)).

Here, Plaintiff engaged in protected activities when he: (1) submitted a 2016 internal grievance pursuant to the CBA on February 24, 2016, after his first layoff; (2) filed two EEOC charges on June 8, 2016; and (3) submitted his second internal grievance in June 2017 after his second layoff.   (Doc. No. 5 ¶¶ 39, 48, 61).

Plaintiff's 2016 layoff could not have been in retaliation for any protected activity because it predated Plaintiffs internal grievances and EEOC charges. Similarly, Plaintiff's last internal grievance postdates all alleged adverse actions and therefore could not have triggered any retaliatory acts by Defendants.   This leaves Plaintiff's EEOC charges, which Plaintiff attempts to cite as the protected activity that triggered his harassment.   (Doc. No. 18 at 8).   Plaintiff's retaliation claim must still fail, though.   Plaintiff does not allege a causal link between the EEOC charges and his 2017 layoff or the alleged offensive comments made toward him.   This second layoff occurred a year after he filed charges with the EEOC.   The Fourth Circuit has

found that a three or four-month gap between a protected activity and an employee's discharge was "too long to establish a causal connection by temporal proximity alone." Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. Appx. 229, 233 (4th Cir.2006); see also King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that a period of two months and two weeks was "sufficiently long so as to weaken significantly the inference of causation between the two events."). ATT transferred Plaintiff to a shop position a second time despite Plaintiff's internal grievances and EEOC charges, weakening to the point of non-existence any causal link between the protected activity and termination.

C.    Hostile Work Environment

Plaintiff also appears to allege a hostile work environment claim. (Doc. No. 5 ¶¶63, 64). Because the ADEA uses the framework for Title VII liability, those same standards apply here. See E.E.O.C. v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004) (stating the same evidentiary standards used in Title VII cases apply to an ADEA claim). To successfully bring a hostile work environment claim, Plaintiff must prove that: "(1) he experienced unwelcome harassment; (2) the harassment was based on … his age; (3) the harassment was sufficiently severe and pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability…." Williams v. Guilford Tech. Cmty. Coll. Bd. of Trustees, 117 F. Supp. 3d 708, 717 (M.D.N.C. 2015) (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)). Plaintiff fails to properly allege the second and third elements.

Plaintiff's hostile work environment claim is abstract at best. Plaintiff failed to include the cause of action in his enumerated claims for relief. In fact, Plaintiff's amended complaint uses the term one time stating, "ATT and the Union are creating a hostile work environment and retaliating against Tate for engaging in protected activity; specifically, by complaining about the Defendant's wrongful employment practices." (Doc. No. 5 ¶ 63). "The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). As shown below, Plaintiff's allegations, even when liberally construed, fail to amount to a hostile work environment claim.

1. Harassment based on age

It appears Plaintiff supports his claim by pointing to a performance review and the several comments made to him by coworkers. As explained above, the alleged comments made to Plaintiff were unwelcomed, but they were not related to Plaintiff's age. As for Plaintiff's employment review, it merely critiques his work performance. In an unpublished but persuasive Fourth Circuit opinion, the Court held that comments objectively related to an employee's work performance are not abusive or creating of a racially hostile work environment. Combs-Burge v. Rumsfeld, 170 F. App'x 856, 862 (4th Cir. 2006) (stating that "counseling [a plaintiff] about performance deficiencies and assigning her remedial tasks . . ., is not the type of conduct that is objectively abusive because it was the direct result of documented

shortcomings in job performance"); see also Mallik v. Sebelius, 964 F. Supp. 2d 531, 546 (D. Md. 2013) (finding that false comments alleging Plaintiff was incompetent, was not knowledgeable, and did no work to the other staff," did not pertain to the plaintiff's race, color, or national origin—the basis of the plaintiff's hostile work environment complaint). Plaintiff has not pled facts showing disparaging comments related to age.

> 2. Severity and Pervasiveness

Even assuming the comments directed at Plaintiff targeted his age, Plaintiff has not shown that the conduct "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Bass, 324 F.3d at 765. The Fourth Circuit has established a high bar for plaintiffs to meet the severity/pervasiveness prong of hostile work environment claims. See E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) ("Even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.). Plaintiff must first show that he subjectively perceived the environment to be abusive." Id. Then, Plaintiff must show "that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." Id. Even if Plaintiff could show that he subjectively perceived conduct within the workplace to be abusive, he failed to plead sufficient facts to show that a reasonable person within his shoes would have reached the same conclusion.

The conduct Plaintiff alleges in his Complaint is not severe. There must be

evidence of something more than "rude treatment by coworkers, callous behavior by one's supervisors, or a routine difference of opinion and personality conflict with one's supervisor." Id.  The Fourth Circuit has described sufficiently severe behavior creating a hostile work environment as conduct having a "particularly threatening character," "degrading," and "humiliating." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 280 (4th Cir. 2015).[3]  Additionally, comments made by a supervisor have been held more severe than comments made by co-equals. Fontainebleau, 786 F.3d at 278.  The comments alleged by Plaintiff did not feature any derogatory terms, nor were the comments made by supervisors to Plaintiff physically threatening. Instead, they appear to amount to little more than rude critiques of Plaintiff's job skills.

Nor were the comments made to Plaintiff pervasive.  Comments in a hostile work environment claim must be repetitive, "resulting in significant emotional distress."[4] Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 336 (4th Cir. 2010).

_____

[3] See also Hoyle v. Freightliner, LLC, 650 F.3d 321, 334 (4th Cir. 2011) (determining physically threatening conduct probative, but not determinative, of the severe/pervasive element); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001) (holding that repeated insults using derogatory terms sufficiently severe and pervasive); Buchhagen, 545 Fed. App'x at 219 (finding plaintiff failed to state a hostile work environment claim when the supervisor mocked plaintiff, made "snide comments," "play[ed] favorites with employees," "repeatedly harp[ed]" on plaintiff's mistakes," and "unfairly scrutinize[ed] and criticiz[ed]" plaintiff).

[4] Hostile comments need not be repetitive if they are particularly severe. Fontainebleau, 786 F.3d at 277("[A]n isolated incident[ ] of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious.").  Plaintiff, however, fails to allege comments of sufficient severity.

Courts have found conduct pervasive when it is "habitual," not "single or scattered incidents." Sunbelt, 521 F.3d at 318; Amimokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" on an almost daily basis); see also Ocheltree v. Scollon Prods., Inc., 521 F.3d 306, 315 (4th Cir. 2003) (finding that male coworkers' daily conduct of simulating sexual conduct with a mannequin, sending sexually explicit songs to plaintiff, and showing plaintiff graphic pornography to be sufficiently severe or pervasive). Here, Plaintiff alleges in his Complaint only scattered instances of unwelcome behavior. Nothing in Plaintiff's Complaint mentions that he faced daily or regular harassment. See Baskerville v. Culligan Intern Co., 50 F.3d 428, 431 (7th Cir. 1995) ("The infrequency of the offensive comments is relevant to an assessment of their impact. A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.") (internal citation omitted). Considering all of the conduct complained of by Plaintiff, it "merely tell[s] a story of a workplace dispute" insufficient to describe severe or pervasive age-based actions necessary to state a claim for hostile work environment. Bass, 324 F.3d at 765.

D.   Breach of Contract Claim

After his ADEA claims, Plaintiff alleges that ATT breached the CBA by removing him from his shop positions and that IAMAW breached its duty of fair representation when it failed to pursue Plaintiff's grievances. The Magistrate Judge

found these claims largely time-barred and otherwise fails to state a claim. (Doc. No. 24 at 7). The Court agrees.

Plaintiff's claim must be brought under the Labor Management Relations Act. Section 301 of the Labor Management Relations Act states that "suits for violation of contracts between an employer and a labor organization representing employees … may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 preempts "any state cause of action for violation of contracts between an employer and a labor organization." <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 23 (1983).

Specifically, Plaintiff's claim constitutes a "hybrid 301" claim—one brought against both his employer and union. <u>Thompson v. Aluminum Co. of Am.</u>, 276 F.3d 651, 656 (4th Cir. 2002) To succeed on such a claim, "an employee must prove both 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." <u>Id.</u> As such, Plaintiff's claims against both ATT and IAMAW are intertwined: "neither claim is viable if the other fails." <u>Id.</u> at 657.

Hybrid 301 claims have a statute of limitations of six months. <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 163-65 (1983). Under this rule, all of Plaintiff's claims would be time-barred except for ATT's decision to layoff Plaintiff from his shop position in 2017. Plaintiff, however, maintains that the statute of limitations should be tolled with respect to his 2016 claims because Plaintiff filed administrative charges with the North Carolina Department of Labor, the National Labor Relations Board,

17

and the EEOC. (Doc. Nos. 5-2, 5-3, 5 ¶¶ 39, 61). This argument is not persuasive. Filing an administrative charge with a government agency does not toll the six-month statute of limitations. Starnes v. Veeder-Root, 2017 WL 913633 at *12 (M.D.N.C. Mar. 7, 2017) (citing Kolomick v. United Steelworkers of Am., Dist. 8, 762 F.2d 354, 355-56 (4th Cir. 1985)). Plaintiff's claim accrued "when [he] could first successfully maintain a suit based on that ca[u]se of action ... or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Id. (quoting Bey v. United Parcel Serv., Inc., Civil Action No. 5:05CV208, 2006 WL 5939398, at *5 (W.D.N.C. Feb. 9, 2006), aff'd, 196 Fed.Appx. 166 (4th Cir. 2006)). Here, that time occurred when IAMAW failed to process his grievance in 2016. Id. ("[T]he cause of action accrued, at the latest, when Teamsters Union failed to proceed with the grievance on March 30, 2015.")

Plaintiff also argues that his claims are not time-barred because his layoffs were "ongoing acts," which continued to toll the statute of limitations. (Doc. No. 17 at 9). This second theory is equally without merit. The Supreme Court and Fourth Circuit have held that discharge decisions are discrete acts and not subject to a continuing violation theory. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); Shipman v. United Parcel Serv., Inc., 581 F. App'x 185, 187 (4th Cir. 2007); see also Brandon v. Carpenters Local 351, 2014 WL 3670788, at *4 (N.D. Ohio July 23, 2014) ("Discrete acts, including termination, failure to promote, denial of transfer, and refusal to hire, do not constitute a continuing violation."). Additionally, for the continuing violation doctrine to apply in the employment sphere, the Fourth

Circuit examines "whether the 'operative facts' underlying the cause of action occurred within the six-month period." Buckhorn v. Int'l Longshoremen's Ass'n, 2016 WL 97827, at *5 (D. Md. Jan. 8, 2016) (citation omitted). In this case, Plaintiff alleges ATT and IAMAW breached the CBA when he was laid off in February 2016 and in 2017. The "operative facts" of Plaintiff's February 2016 layoff would include his layoff and complaint filed with his terminal manager, which all occurred within February 2016, and thus occurred outside of the statute of limitations. (Doc. No. 5 at 6). Therefore, the Magistrate Judge properly determined that Plaintiff's claims are time-barred with exception of his shop removal in 2017.

As for his timely 2017 claim, Plaintiff has failed to allege sufficient facts to survive a motion to dismiss. Taking the factual allegations of the Complaint as true, Plaintiff has not alleged facts showing ATT departed from the layoff plan delineated in the CBA. (Doc. No. 5-1 at 6). Plaintiff lacked substantial terminal seniority at the Mt. Holly terminal. (Doc. No. 5 ¶ 54). Furthermore, Plaintiff's negative performance review shortly before his June 2017 layoff is further evidence of a reasonable decision by ATT to remove Plaintiff from his shop position during his qualification period. (Doc. No. 5 ¶ 60).

The Court does recognize that ATT may have breached the CBA by not responding to Plaintiff's 2017 grievance within the mandatory 10 days. Even if that is so, Plaintiff has failed to show how IAMAW breached its duty of fair representation—the first hurdle to a hybrid 301 claim. See Thompson, 276 F.3d at 657 ("federal courts review allegations against employers for breach of collective

bargaining agreements only when an employee has first proved that the union representing him breached its duty of fair representation."). "A union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991). The CBA does not mandate IAMAW to bring Plaintiff's claim. Rather, the CBA allows "[t]he aggrieved party *or* his Union representative" to give a statement of grievance to the Terminal Manager. (Doc. No. 12-1 at 28) (emphasis added). Furthermore, even if IAMAW did have more responsibility under the CBA to be involved in Plaintiff's grievance, the Fourth Circuit has held that unions have the ability to screen grievances. "An employee has no absolute right to insist that his grievance be taken to a certain level; a 'union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large.'" Thompson, 276 F.3d at 658 (quoting Griffin v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW, 469 F.2d 181 (4th Cir. 1972)). Plaintiff would have still been a junior-level employee inside his qualification period at his shop position in 2017, and thus it is not unreasonable for the union to perceive his layoff as meritless. (Doc. 5-1 at 6).

The Grievance and Arbitration Procedure is hinged on "matters that are grievable under the [CBA]." (Doc. No. 12-1 at 28). Plaintiff's claim that his 2016 and 2017 layoffs breached the CBA are, without more alleged, without merit. The Court finds nothing more in Plaintiff's Amended Complaint than the fact that ATT transferred and laid off Plaintiff in accordance to the CBA's terms. It therefore does

not appear to the Court that Plaintiff had a "grievable" matter under the CBA to trigger a 10 day response from the Terminal Manager.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.    The Magistrate Judge's M&R, (Doc. No. 24) is **ADOPTED**;

2.    Defendants' Motions to Dismiss, (Doc. Nos. 11; 13), are **GRANTED**; and

3.    The Clerk of Court is directed to close this case.

Signed: August 15, 2018

Robert J. Conrad, Jr.
United States District Judge